UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| SAMANTHA SUAREZ, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 25-cv-12860 |
| | ) | |
| v. | ) | |
| | ) | |
| ENVIRONMENTAL LAW & POLICY CENTER, | ) | |
| | ) | |
| | ) | JURY TRIAL DEMANDED |
| Defendant. | ) | |

**COMPLAINT**

NOW COMES Plaintiff, SAMANTHA SUAREZ, by and through her counsel, Jeffrey Law Office, LLC, and complains of Defendant, ENVIRONMENTAL LAW & POLICY CENTER, and states as follows:

**JURY DEMAND**

Plaintiff hereby demands a trial by jury pursuant to Federal Rule of Civil Procedure 38(b) on all triable issues.

**JURISDICTION & VENUE**

1. This action is brought under Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. § 2000e, et. Seq., the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 et seq., and 28 U.S.C. § 1331. This Court has jurisdiction of the state law whistleblower act claim pursuant to 28 U.S.C. §1367 under the principles of supplemental jurisdiction, and such claims so relate to the federal claims as to form a part of the same case and controversy.

2. Venue is proper in this Court under 28 U.S.C. § 1391, as Defendant resides in this District, all of the events or omissions giving rise to these claims occurred in this District, and Plaintiff was hired, employed, terminated, and harmed by Defendant in this District.

1

**PARTIES**

3. Plaintiff, SAMANTHA SUAREZ ("Plaintiff"), was at all times relevant to this suit an adult, residing in Chicago, Illinois. At all times relevant, Plaintiff was employed by Defendant in this District. Plaintiff was hired, employed, terminated, and harmed by Defendant in this District.

4. Defendant, ENVIRONMENTAL LAW & POLICY CENTER ("Defendant"), is duly organized and doing business in Illinois. It has obligations as an indemnitor of conduct of its employees and officers under at least 745 ILCS 10/2-301, *et seq.* and 745 ILCS 10/9-101, *et seq*. Defendant hired, employed, terminated, and harmed Plaintiff in this District. Defendant employs at least 15 full-time employees and therefore is a covered employer under Title VII and ADA.

**EXHAUSTION OF ADMINISTRATIVE REMEDIES**

5. On or about April 11, 2025, Plaintiff timely filed Charges of Discrimination alleging disability discrimination and harassment, and retaliation with the Equal Employment Opportunity Commission ("EEOC"), Charge No. 440-2025-04601 against Defendant.

6. On July 23, 2025, the EEOC issued Plaintiff a Notice of Right to Sue.

7. Therefore, Plaintiff's Complaint was filed in a timely manner; and Plaintiff has fully complied with all prerequisites to jurisdiction in this Court.

**UNDERLYING FACTS COMMON TO ALL COUNTS**

8. In November of 2022, Plaintiff was hired as a Digital Communications Strategist by Environmental Law & Policy Center ("Defendant").

9. Plaintiff has a disability as defined under the Americans with Disability Act (ADA).

10. Defendant was apprised of Plaintiff's disability.

11. Defendant denied Plaintiff ADA accommodations.

2

12. At all times relevant to this Charge, and since being hired by Defendant, Plaintiff always performed her job satisfactorily and within Defendant's legitimate expectations.

13. At all times relevant hereto, Mary McClelland was Plaintiff's direct supervisor and Gillian Vaz-Cronin was Defendant's HR Chief.

14. Ms. McClelland and Ms. Vaz-Cronin harassed Plaintiff, creating a hostile work environment.

15. Plaintiff requested reasonable accommodations for her disability in the summer of 2023, soon after her formal diagnosis. Plaintiff's job was highly independent, digital-focused, and output-based, making remote work and a flexible schedule reasonable and effective solutions.

16. However, instead of engaging in collaborative, legally required interactive process, Defendant's HR Chief, Gillian Vaz-Cronin, immediately framed Plaintiff's request as a negotiation rather than a disability accommodation. Her first response was to point out Defendant's general policy of "having that face time in the office" twice a week, before even discussing whether Plaintiff's request was reasonable or how Defendant could accommodate it.

17. Thus, instead of working with Plaintiff to develop reasonable solutions, Defendant placed the burden of accommodation onto Plaintiff by asking her to adjust to Defendant's existing structure.

18. The situation only caused more hostility from Plaintiff's supervisor and left Plaintiff without a structured, reliable system that actually supported her reasonable needs.

19. Defendant refused to provide a structured accommodation policy.

20. Defendant ignored Plaintiff's repeated requests for clear written accommodations despite her willingness to provide medical documentation.

21. However, Defendant granted Pouyan Hatami, a non-disabled employee, permanent remote work privileges so he could relocate to California, but forced Plaintiff to justify every request, treating accommodations as a burden.

22. To make matters worse, a discriminatory statement was made during Plaintiff's second annual review in 2024 by Mary McClelland. She said, "The numbers don't lie" (referring to Plaintiff's proven digital growth), "but the way I get there makes it hard to appreciate the result."

23. In October of 2024, Plaintiff attempted to pursue mediation through HR. Plaintiff asked Gillian if she could facilitate a conversation between Plaintiff and Mary to resolve their differences, further inquiring what that process looked like. Gillian told Plaintiff she could do this, but Mary must agree to participate. Mary declined to engage in any structured conflict resolution.

24. No adjustments were made to Plaintiff's accommodation, nor was any attempt made to improve their working relationship.

25. On November 13, 2024, Plaintiff emailed Gillian Vaz-Cronin stating her desire for straightforward, official accommodation. Plaintiff attached forms she found on the state's government's website to formally initiate the request, hoping her advanced research would make the process convenient for ELPC.

26. Gillian immediately dismissed Plaintiff's request, stating that the forms were only for state employees and did not apply to Plaintiff. She provided no alternative options for documenting or formalizing Plaintiff's accommodation.

27. In December of 2024, the stress of Plaintiff's work environment, her supervisor's hostility, and the fallout of her pregnancy contributed to a severe decline in her mental health, including suicidal ideation.

28. As a result, Plaintiff requested three hours of PTO for burnout and nausea. Mary pushed back so aggressively that Plaintiff felt forced to disclose her suicidal ideation just to have her request honored without scrutiny. Mary then approved her request without further resistance and said she would flag their conversation with HR. This made Plaintiff feel surveilled and that her main concern was to legally protect Defendant. HR's only response was to reference their Employee Assistance Program.

29. When Plaintiff began sobbing over the phone with HR describing her ongoing conflicts with her supervisor, Gillian said "Mary's not a monster, you know." HR did not send Plaintiff instructions to access the EAP, nor did they provide the information to a suicidal hotline or ask for Plaintiff's permission to contact her therapist's or psychiatrist to ensure she received the help she needed.

30. Even though Defendant could fully accommodate remote work, as evidenced by its decision to grant permanent remote status to Pouyan Hatami for non-disability reasons, it refused to formalize Plaintiff's accommodation, further proving that its resistance had nothing to do with business necessity or undue hardship.

31. On February 5, 2025, immediately after Plaintiff completed a successful digital campaign, HR's Gillian Vaz-Cronin terminated Plaintiff under pretext. She claimed Plaintiff was "not a good fit" despite Plaintiff's good working relationships with everyone but Mary, who did not attend Plaintiff's termination meeting.

32. Plaintiff asked for written confirmation of her termination to ensure no issues with unemployment benefits, but Gillian declined.

33. Because of Plaintiff's disability, Plaintiff was subjected to harassment, disparate treatment and discrimination.

34. Because Plaintiff requested accommodation, exercising a right and protected activity, she was subjected to escalated disparate treatment, harassment, and ultimately terminated on or about February 5, 2025.

## COUNT I — DISCRIMINATION / FAILURE TO ACCOMMODATE
## AMERICANS WITH DISABILITIES ACT, 42 U.S.C. § 12101, et. seq.

35. Plaintiff incorporates by reference and restates herein by express reference all other paragraphs of this Complaint.

36. Defendant is an employer, as defined by the ADA.

37. Plaintiff has been diagnosed with a disability protected by the ADA.

38. Plaintiff satisfied the prerequisites of and was qualified to perform the essential functions of her job with or without reasonable accommodation.

39. The ADA prohibits discrimination against a qualified individual with a disability because of the disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment. See 42 U.S.C. § 12112(a).

40. Nevertheless, Defendant discriminated against Plaintiff because she suffered from a protected disability.

41. Similarly situated employees without a disability were treated more favorably by Defendant.

42. Therefore, Plaintiff suffered an adverse employment action by Defendant because of her disability.

43. Defendant's discrimination constitutes unlawful discrimination in direct violation of the ADA.

WHEREFORE, Plaintiff, SAMANTHA SUAREZ, respectfully requests that this Court enter judgment in her favor and against the Defendant as follows:

A. Declare, decree, and adjudge that the Defendant violated ADA;

B. Grant an injunction against the Defendant from violating ADA and to protect other employees with disabilities from such Civil Rights violations;

C. Enter appropriate injunctive relief awarding the Plaintiff the back pay, front pay, wages, employee benefits, and other compensation that she was denied or lost and reinstating her to the position she previously held;

D. Order the Defendant to pay the Plaintiff compensatory and punitive damages;

E. Award the Plaintiff pre-judgment and post-judgment interest to which she is entitled;

F. Award the Plaintiff her reasonable attorney's fees and costs; and

G. Award such other and further relief as it is just and appropriate, including nominal damages.

## COUNT II – RETALIATION
## AMERICANS WITH DISABILITIES ACT, 42 U.S.C. § 12101, et. seq.

44. Plaintiff incorporates by reference and restates herein by express reference all other paragraphs of this Complaint.

45. It is unlawful and a civil rights violation for an employer to retaliate against an employee because the employee has opposed that which they reasonably and in good faith believes to be unlawful discrimination, for reporting discrimination, opposing an employer's discriminatory practices or because the employee has made a charge, filed a complaint or participated in an investigation or legal action related to discrimination under ADA.

46. Plaintiff had engaged in a protected activity under ADA after having reported her disability and requested accommodation.

7

47. Plaintiff sought to protect herself against the unlawful discrimination based upon having previously reported the disability and requested accommodations.

48. Defendant's decision to discriminate against Plaintiff was motivated by an intent to retaliate against her because of her protected class and conduct.

49. Defendant would not have discriminated against Plaintiff had he not previously engaged in protected activity and everything else being the same.

50. Other Defendant employees subjected to the same work environment, policies, procedures, and guidelines as Plaintiff were not discriminated against based upon engaging in the same protected activities. This unlawful discrimination and treatment of Plaintiff directly impacted her terms and conditions of employment with Defendant.

51. As a direct and proximate result of Defendant's violations on the basis of retaliation, a result of the unlawful and willful acts complained of herein, Plaintiff has suffered economic and non-economic damages.

52. Defendant's discrimination constitutes unlawful discrimination in direct violation of ADA.

WHEREFORE, Plaintiff, SAMANTHA SUAREZ, respectfully requests that this Court enter judgment in her favor and against the Defendant as follows:

A. Declare, decree, and adjudge that the Defendant violated ADA;

B. Grant an injunction against the Defendant from violating ADA and to protect other employees from such violations;

C. Enter appropriate injunctive relief awarding the Plaintiff the back pay, front pay, wages, employee benefits, and other compensation that she was denied or lost and reinstating her to the position she previously held;

D. Order the Defendant to pay the Plaintiff compensatory damages;

E. Award the Plaintiff pre-judgment and post-judgment interest to which she is entitled;

F. Award the Plaintiff her reasonable attorney's fees and costs; and

G. Award such other and further relief as it is just and appropriate, including nominal damages.

Dated: October 21, 2025

    /s    Antonio L. Jeffrey
Attorney for Plaintiff

JEFFREY LAW OFFICE, LLC
Antonio L. Jeffrey (#6308345)
1301 W. 22nd Street, Suite 308
Oak Brook, Illinois 60523
(312) 583-7072
(312) 583-0888 (fax)
ajeffrey@jeffreylawoffice.com